Fred von Lohmann (FV 3955)
*Appearing pro hac vice*
ELECTRONIC FRONTIER FOUNDATION
454 Shotwell Street
San Francisco, CA 94110
(415) 436-9333 x123
fax (415) 436-9993
fred@eff.org

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re: ZYPREXA LITIGATION | No. 07-CV-0504 (JBW) |

**NONPARTIES MINDFREEDOM INTERNATIONAL, JUDI CHAMBERLIN, ROBERT WHITAKER, VERA SHARAV, DAVID COHEN, ALLIANCE FOR HUMAN RESEARCH PROTECTION, AND JOHN DOE'S JOINT MEMORANDUM OF POINTS & AUTHORITIES IN OPPOSITION TO ELI LILLY'S REQUEST TO EXTEND THE JANUARY 4, 2007 TEMPORARY MANDATORY INJUNCTION**

## TABLE OF CONTENTS

Page

I. Eli Lilly's Proposed Injunction Constitutes an Unconstitutional Prior Restraint on Speech ................................................................................................ 2

    A. *Proctor & Gamble v. Bankers Trust* Bars the Relief Sought by Eli Lilly. ........................................................................................................... 3

    B. Even Assuming the Lilly Documents Were Unlawfully Disclosed, That Would Not Justify a Prior Restraint Against the Nonparties .................... 6

    C. *Seattle Times v. Rhinehart* Does Not Authorize a Prior Restraint Against the Nonparties ........................................................................................ 8

    D. Eli Lilly Has Failed to Overcome the Heavy Presumption of Unconstitutionality that Attends a Prior Restraint Against Pure Speech .......... 10

II. The Relief Sought by Eli Lilly Against the Nonparties is Beyond the Scope of the Court's Injunctive Authority ........................................................................... 12

# TABLE OF AUTHORITIES

Page

**Federal Cases**

*Alemite Mfring Corp. v. Staff,*
42 F.2d 832 (2d Cir. 1930) ............................................................................................... 12, 13

*Boehner v. McDermott,*
191 F.3d 463 (D.C. Cir. 1999) ................................................................................................ 7

*Bridge C.A.T. Scan Assoc's v. Technicare Corp.,*
710 F.2d 940 (2d Cir. 1983) ................................................................................................. 11

*CBS Inc v. Davis,*
510 U.S. 1315 (1994) ................................................................................................... 5, 6, 11

*Bartnicki v. Vopper,*
532 U.S. 514 (2001) .............................................................................................. 4, 6, 7, 8, 9

*Ford Motor Co. v. Lane,*
67 F. Supp. 2d 745 (E.D. Mich. 1999) ...................................................................... 5, 6, 9, 11

*In re Providence Journal Co.,*
820 F.2d 1342 (1st Cir. 1986) ........................................................................................ passim

*Madsen v. Women's Health Ctr.,*
512 U.S. 753 (1994) ................................................................................................................ 5

*Nebraska Press Ass'n v. Stuart,*
427 U.S. 539 (1976) ................................................................................................................ 3

*New York Times v. United States,*
403 U.S. 713 (1971) ....................................................................................................... 5, 6, 9

*Paramount Pictures Corp. v. Carol Publishing Group, Inc.,*
25 F.Supp.2d 372 ............................................................................................................ 12, 13

*People of N.Y. v. Operation Rescue Nat'l,*
80 F.3d 64 (2d Cir. 1996) ............................................................................................... 12, 13

*Proctor & Gamble Co. v. Bankers Trust Co.,*
78 F.3d 219 (6th Cir. 1996) ............................................................................................ passim

*Regal Knitwear Co. v. N.L.R.B.,*
324 U.S. 9 (1945) ................................................................................................................. 12

*Schenck v. Pro-Choice Network of Western N.Y.*,
   519 U.S. 357 (1997) ............................................................................................... 5

*Seattle Times Co. v. Rhinehart*,
   467 U.S. 20 (1984) ........................................................................................ 4, 8, 9

*U.S. v. Quattrone*,
   402 F.3d 304 (2d Cir. 2005) ......................................................................... 3, 4, 10

*Universal City Studios v. Corley*,
   273 F.3d 429 (2d Cir. 2001) .................................................................................. 5

*Zenith Radio Corp. v. Hazeltine Research, Inc.*,
   395 U.S. 100 (1969) ............................................................................................ 12

### State Cases

*DVD Copy Control Ass'n v. Bunner*,
   31 Cal. 4th 864 (Cal. 2003) .................................................................................. 5

Fred von Lohmann (FV 3955)
*Appearing pro hac vice*
ELECTRONIC FRONTIER FOUNDATION
454 Shotwell Street
San Francisco, CA 94110
(415) 436-9333 x123
fax (415) 436-9993
fred@eff.org

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| In re: ZYPREXA LITIGATION | No. 07-CV-0504 (JBW) |
|---|---|

### NONPARTIES MINDFREEDOM INTERNATIONAL, JUDI CHAMBERLIN, ROBERT WHITAKER, VERA SHARAV, DAVID COHEN, ALLIANCE FOR HUMAN RESEARCH PROTECTION, AND JOHN DOE'S JOINT MEMORANDUM OF POINTS & AUTHORITIES IN OPPOSITION TO ELI LILLY'S REQUEST TO EXTEND THE JANUARY 4, 2007 TEMPORARY MANDATORY INJUNCTION

Eli Lilly seeks a prior restraint against 11 individuals and 5 websites, forbidding them (and any who would assist them) from publishing or disseminating certain documents that it produced in discovery subject to a protective order (the "Lilly Documents"). It is undisputed that the information contained in the Lilly Documents is truthful and of public concern, shedding light on the potential side effects facing patients who use Zyprexa. It is also undisputed that none of the individuals or websites that Lilly seeks to enjoin had any knowledge of, much less involvement in, the allegedly unlawful disclosure of the Lilly Documents by Dr. David Egilman to Mr. James Gottstein.

In light of these undisputed facts, MindFreedom International, David Oaks, Judi Chamberlin, Robert Whitaker, the Alliance for Human Research Protection (AHRP), Vera Sharav, David Cohen, and John Doe (collectively, "the Nonparties") ask this Court to deny Eli

Lilly's request for an extension of this Court's January 4, 2007 Temporary Mandatory Injunction, and instead dissolve the existing injunction against them and the MindFreedom, AHRP, and zyprexa.pbwiki.com websites.

## BACKGROUND[1]

Eli Lilly alleges that Dr. David Egilman disclosed the Lilly Documents to Mr. James Gottstein, thereby violating Case Management Order No. 3, entered by this Court on August 3, 2004 ("CMO-3"). Eli Lilly further alleges that Mr. Gottstein aided and abetted Dr. Egilman's violation of CMO-3. Eli Lilly has already obtained injunctions against Dr. Egilman and Mr. Gottstein.[2]

Now Eli Lilly seeks a further injunction against the Nonparties, despite the undisputed fact that none of them had any knowledge of, or involvement in, the disclosure of documents by Dr. Egilman to Mr. Gottstein, and thus no involvement in the violation of CMO-3. In fact, the evidence establishes that the Nonparties first heard about the Lilly Documents only *after* Dr. Egilman had already disclosed them and *after* Mr. Gottstein had put copies of them in the mail. Nonparties' Findings at ¶¶ 2, 4, 7, 12, 16.

## ARGUMENT

### I. Eli Lilly's Proposed Injunction Constitutes an Unconstitutional Prior Restraint on Speech

The preliminary injunction sought here by Eli Lilly constitutes a prior restraint on pure speech regarding a matter of public concern — namely, the publication and dissemination of the

---

[1] In order to avoid redundancy, the Nonparties hereby incorporate by reference their Proposed Findings of Fact and Objections to Eli Lilly's Amended Proposed Findings of Fact (filed Feb. 7, 2007) ("Nonparties' Findings"), submitted with this Memorandum.

[2] Eli Lilly Memorandum of Points & Authorities Concerning Its Request to Modify and Extend the Court's Jan. 3, 2007 Temporary Mandatory Injunction (filed Jan. 31, 2007) ("Lilly Memo.") at 3 n.1 ("Mr. Gottstein and Dr. Egilman are already permanently enjoined....").

2

Lilly Documents. "[P]rior restraints on speech and publication are the most serious and the least tolerable infringement on First Amendment rights." *Nebraska Press Ass'n v. Stuart,* 427 U.S. 539, 559 (1976). Accordingly, any prior restraint "bears a heavy presumption against its constitutional validity." *U.S. v. Quattrone,* 402 F.3d 304, 310 (2d Cir. 2005). Furthermore, "[a] prior restraint is not constitutionally inoffensive merely because it is temporary." *Id.*

The prior restraint sought by Eli Lilly here would be aimed not at a party to this litigation, nor at an agent of a party (such as Dr. Egilman), nor even at a nonparty who aided or abetted a party or her agent (as Mr. Gottstein is alleged to have done). Instead, Eli Lilly seeks to suppress the speech of persons who had no knowledge of, or involvement in, the disclosure of documents by Dr. Egilman to Mr. Gottstein. Because the documents were allegedly disclosed in violation of CMO-3, Eli Lilly would have the Court issue the digital equivalent of a "stop the presses" order against their further publication by those who had nothing to do with their initial disclosure. Eli Lilly's request to suppress public discourse about this important public health issue cannot be squared with the First Amendment.

### A. *Proctor & Gamble v. Bankers Trust* Bars the Relief Sought by Eli Lilly

In *Proctor & Gamble Co. v. Bankers Trust Co.,* 78 F.3d 219 (6th Cir. 1996), the Sixth Circuit Court of Appeals addressed a situation very nearly identical to the instant case. In that case, *Business Week,* which was not a party to the underlying civil dispute between two corporate litigants, obtained documents from the litigation that were subject to a protective order. *Id.* at 222. Just as in the instant case, the protective order there delegated to the parties the determination of which documents to designate as confidential. *Id.* Just as here, the district court there issued a series of temporary injunctions forbidding the magazine from publishing the documents and subsequently held a hearing inquiring into the manner in which *Business Week* came into possession of the documents. *Id.* After the hearing concluded, the district court

3

concluded that *Business Week* had "knowingly violated the protective order by obtaining the documents" and issued a permanent injunction barring publication of the documents. *Id.* at 223.

On appeal, the Sixth Circuit concluded that all of the injunctions were impermissible prior restraints on pure speech in violation of the First Amendment. *Id.* at 225-27. The court held that a party seeking even a temporary injunction against pure speech must establish that "publication [would] threaten an interest more fundamental than the First Amendment itself." *Id.* at 227. While admitting that restrictions on the dissemination of information obtained in discovery may be permissible against *parties* in the litigation, the court held that similar restrictions on independent *nonparties* are impermissible. *See id.* at 225 (distinguishing *Seattle Times Co. v. Rhinehart*, 467 U.S. 20 (1984)). Moreover, the court noted that although brief injunctions to facilitate judicial deliberation are generally proper, "when that approach results in a prior restraint on pure speech by the press it is not allowed." *Id.* at 226; *accord In re Providence Journal Co.*, 820 F.2d 1342, 1351 (1st Cir. 1986).

Lilly's efforts to distinguish *Proctor & Gamble* are unavailing. For example, Lilly contends that the injunction requested here is "content-neutral," and therefore entirely exempted from prior restraint analysis. Lilly Memo. at 12. As an initial matter, this misstates the law of this Circuit. *See Quattrone*, 420 F.3d at 309 n.5 ("[W]e recognize that the case law has not clearly articulated whether prior restraints are always, by definition, content-based."). In addition, this argument simply misapprehends the relevant question—where pure speech on a matter of public concern is at stake, the courts have not allowed a content-neutral purpose to override the First Amendment. *See Bartnicki v. Vopper*, 532 U.S. 514, 526 (2001) (holding

4

content-neutral law unconstitutional as applied to publishers of unlawfully intercepted cell phone conversation).[3]

In any event, the injunction sought here is plainly content-based. Eli Lilly has targeted particular documents for suppression based on the information contained therein. Lilly's allegedly content-neutral "purpose" for doing so does not distinguish this case from the myriad precedents striking down prior restraints in similar circumstances. *See, e.g., CBS Inc. v. Davis*, 510 U.S. 1315, 1317-18 (1994) (Blackmun, J., as Circuit Judge) (overturning injunction on broadcast of specific hidden camera footage as a prior restraint despite risk of disclosure of trade secrets); *Proctor & Gamble*, 78 F.3d at 225 (holding the prohibition on publication of documents subject to a protective order was a "classic case of a prior restraint"); *In re Providence Journal*, 820 F.2d at 1349-50 (striking down prior restraint despite content-neutral purposes served by restraint); *Ford Motor Co. v. Lane*, 67 F. Supp. 2d 745, 750 (E.D. Mich. 1999) (rejecting as prior restraint an injunction aimed at preventing publication of Ford trade secrets). Eli Lilly's view, in fact, runs squarely counter to the Supreme Court's watershed ruling in the Pentagon Papers case, where the government's avowed purpose—the protection of national security—was surely content-neutral. *See New York Times Co. v. United States*, 403 U.S. 713, 718 (1971) (Black, J., concurring) (noting government's invocation of national security to justify prior restraint).[4]

---

[3] None of the cases cited by Lilly involved a prior restraint on pure speech. *See Schenck v. Pro-Choice Network of Western N.Y.*, 519 U.S. 357 (1997) (injunction on conduct, not pure speech); *Universal City Studios v. Corley*, 273 F.3d 429 (2d Cir. 2001) (injunction on distribution of software based on functional characteristics); *DVD Copy Control Ass'n v. Bunner*, 31 Cal. 4th 864 (Cal. 2003) (same).

[4] The narrow exception the Supreme Court has carved for prior restraints on expressive conduct, moreover, has been applied only where the injunction was content-neutral, the enjoined parties were free to engage in the enjoined expression in other venues, *and* the enjoined parties had a history of unlawful conduct. *See, e.g., Madsen v. Women's Health Ctr.*, 512 U.S. 753, 763

5

### B. Even Assuming the Lilly Documents Were Unlawfully Disclosed, That Would Not Justify a Prior Restraint Against the Nonparties

Eli Lilly next attempts to evade the prior restraint doctrine by emphasizing that the documents here were allegedly disclosed unlawfully, in violation of CMO-3. The Supreme Court, however, has made it clear that the First Amendment protects the right of independent third parties to publish information, even where the information was originally unlawfully obtained or released in breach of a legal obligation. *See Bartnicki,* 532 U.S. at 528 (explaining that the Supreme Court in the Pentagon Papers case "upheld the right of the press to publish information of great public concern obtained from documents stolen by a third party."); *CBS v. Davis,* 510 U.S. at 1318 ("Nor is the prior restraint doctrine inapplicable because the videotape was obtained through the 'calculated misdeeds' of CBS."); *New York Times v. U.S.,* 403 U.S. at 750 (Burger, C.J., dissenting) (noting that the Pentagon Papers had been "illegally acquired by someone"); *see also In re Providence Journal,* 820 F.2d at 1349 ("Even if the materials had been given to the Journal improperly or unlawfully, a prior restraint against publication would still be improper."); *Ford Motor Co.,* 67 F.Supp.2d at 750 (rejecting prior restraint even where publisher "knew or had reason to know that his knowledge of the trade secret was derived from or through a person who had utilized improper means to acquire it....").

Particularly instructive on this point is the Supreme Court's ruling in *Bartnicki,* where the Court considered whether the state could punish the "repeated intentional disclosure of an illegally intercepted cellular telephone conversation about a public issue" by media outlets that had not been involved in the interception, but were aware that the recordings were the product of unlawful interception. *Bartnicki,* 532 U.S. at 517. In that case, the Court answered the following question in the negative:

---

n.2 (1994). The instant case shares none of these characteristics.

6

> "Where the punished publisher of information has obtained the information in question in a manner lawful in itself but from a source who has obtained it unlawfully, may the government punish the ensuing publication of that information based on the defect in a chain?"

*Id.* at 528 (quoting *Boehner v. McDermott*, 191 F.3d 463, 484-85 (D.C. Cir. 1999) (Sentelle, J., dissenting)). In reaching this conclusion, the Court focused on three issues:

> First, respondents played no part in the illegal interception. Rather, they found out about the interception only after it occurred, and in fact never learned the identity of the person or persons who made the interception. Second, their access to the information on the tapes was obtained lawfully, even though the information itself was intercepted unlawfully by someone else....Third, the subject matter of the conversation was a matter of public concern.

*Id.* at 525; *see also In re Providence Journal*, 820 F.2d at 1349-50 (prior restraint on publication of FBI files improper, even if initial disclosure was unlawful).

Like the media outlets in *Bartnicki*, the Nonparties here (1) did not know of nor participate in the allegedly unlawful disclosure of the Lilly Documents by Dr. Egilman to Mr. Gottstein; (2) broke no law by receiving the Lilly Documents from Mr. Gottstein or anonymous Internet sources; but (3) have nevertheless been enjoined from disseminating information on a matter of obvious public concern.

In fact, the Lilly Documents implicate a matter of public concern whose importance exceeds that at issue in *Bartnicki*. According to the *New York Times,* the Lilly Documents reveal a pattern of unlawful and deceptive activities by Eli Lilly that may have left the more than 20 million individuals who have taken Zyprexa with incomplete information regarding the side effects of the drug. Nonparties' Findings at ¶ 20. Even now, lacking this potentially important information, thousands of individuals and doctors are making decisions regarding the prescribing and use of Zyprexa. The Lilly Documents have already, in the few weeks since their release, spawned several stories in the *New York Times*, as well as inquiries from the *Wall Street Journal, Bloomberg, Pharma Marketing News, Slate,* and at least one academic researcher. *Id.* In light of

these facts, there can be no doubt that the Lilly Documents relate to a matter of overriding public concern.

For all of these reasons, *Bartnicki v. Vopper* bars the injunction sought by Eli Lilly here.[5]

### C. *Seattle Times v. Rhinehart* Does Not Authorize a Prior Restraint Against the Nonparties

Faced with *Proctor & Gamble* and *Bartnicki*, Eli Lilly pins its hopes on *Seattle Times v. Rhinehart*, 467 U.S. 20 (1984). That case, however, provides no support to Lilly. *Seattle Times* stands for the proposition that a valid protective order can prohibit *parties* engaged in litigation from disclosing materials produced in pre-trial discovery. That ruling, however, "does not govern the situation where an independent news agency, having gained access to sealed documents, decides to publish them." *Proctor & Gamble,* 78 F.3d at 225. Where an injunction would "prevent[] a news organization from publishing information in its possession on a matter of public concern[,]... private litigants' interest in protecting their vanity or their commercial self-interest simply does not qualify as grounds for imposing a prior restraint." *Id.*

It is undisputed that none of the Nonparties that Eli Lilly seeks to enjoin here are parties in the underlying products liability litigation between Eli Lilly and its customers. It is also undisputed that none of the Nonparties are signatories to CMO-3. Accordingly, the holding of *Seattle Times* does not, by its terms, authorize prior restraints against the Nonparties.

In an effort to force the square facts of this case into the round hole of *Seattle Times,* Lilly attempts to characterize the Nonparties as "aiders and abettors" of Dr. Egilman, who is subject to CMO-3. Even assuming that *Seattle Times* authorizes prior restraints against those

---

[5] The First Amendment interests of the Nonparties are also weightier than those at issue in *Bartnicki,* since the instant case involves a prior restraint, whereas *Bartnicki* involved a civil penalty after publication.

8

who aid and abet the violation of a protective order governing pretrial discovery,[6] none of the Nonparties engaged in any conduct that can fairly be viewed as "aiding and abetting" Dr. Egilman's disclosure of the Lilly Documents to Mr. Gottstein. The undisputed evidence establishes that none of the Nonparties had any knowledge of, or involvement in, the disclosure of documents by Dr. Egilman to Mr. Gottstein. Nonparties' Findings at ¶¶ 2, 4, 7, 12, 16. Only *after* Dr. Egilman transferred the documents to Mr. Gottstein, and *after* Mr. Gottstein had further disseminated them to 15 other persons, did the Nonparties first hear about the Lilly Documents. *Id.* (citing Tr. of Jan. 16, 2007 hearing before Hon. J. Weinstein at 57-59, submitted as Exh. 4 to Lilly Prop. Findings; Tr. of Jan. 17, 2007 hearing before Hon. J. Weinstein (hereafter "Jan. 17 Tr.") at 151-54, submitted as Exh. 7 to Lilly Prop. Findings.) In fact, Mr. Gottstein expressly apologized to Mr. Oaks, Mr. Whitaker, Ms. Sharav, and Ms. Chamberlin "for getting you in the middle of this without asking you first." *Id.* at ¶ 7, 12 (citing Pet'r Exh. 7 at 843, submitted as Exh. 25 to Lilly's Prop. Findings). Consequently, it is impossible for the Nonparties to have aided or abetted the disclosure of the Lilly Documents by Dr. Egilman in violation of CMO-3.

While the evidence establishes that some of the Nonparties (Mr. Oaks, Mr. Whitaker, Ms. Sharav, and John Doe[7]) had an interest in promoting further public access to the Lilly Documents, this interest makes the Nonparties no different from the journalists involved in *Bartnicki*, *New York Times Co.*, and *Ford Motor Co.* In each of those cases, the initial discloser obtained information unlawfully and passed it along to journalists, who in turn further

---

[6] Lilly cites no precedent suggesting that the rationale of *Seattle Times* should be extended to endorse prior restraints against nonparties who "aid and abet" disclosure of pretrial discovery materials produced subject to a valid protective order. If anything, existing precedents support a contrary result. *See Ford Motor Co.*, 67 F.Supp.2d at 750 (rejecting prior restraint on publication even where publisher himself violated Michigan trade secret laws in obtaining information).

[7] Eli Lilly has introduced no evidence suggesting that Judi Chamberlin had any interest in further disseminating the Lilly Documents.

9

disseminated the information to the public. Just as this shared desire to disseminate information of public concern did not transform the journalists in those cases into "aiders and abettors," so, too, the shared desire to promote public access to the Lilly Documents does not transform the Nonparties into after-the-fact "aiders and abettors" of Dr. Egilman's allegedly unlawful disclosure. *See In re Providence Journal,* 820 F.2d at 1350 ("Although a Fourth Amendment violation might have occurred when the FBI conducted the surveillance, or possibly when it turned the information over to the media, no Fourth Amendment issues are implicated by the publication of that information by the Journal.").

### D. Eli Lilly Has Failed to Overcome the Heavy Presumption of Unconstitutionality that Attends a Prior Restraint Against Pure Speech

Eli Lilly is seeking a preliminary injunction against further publication and dissemination of the Lilly Documents, presumably pending the initiation and resolution of contempt proceedings against Dr. Egilman and Mr. Gottstein. For the reasons set forth above, such an injunction would constitute a prior restraint on pure speech. "Any imposition of a prior restraint, bears a heavy presumption against its constitutional validity." *Quattrone,* 402 F.3d at 310. Eli Lilly has failed to overcome this presumption here.

"[T]he prerequisites for emergency, temporary injunctive relief in the First Amendment realm differ dramatically, and appropriately, from the realm of everyday resolution of civil disputes governed by the Federal Rules." *Proctor & Gamble,* 78 F.3d at 227. Accordingly, Eli Lilly must satisfy not the traditional preliminary injunction standard, but rather the far more exacting prior restraint standard. *See id.* at 226-27. In order to justify a prior restraint, the party seeking it must demonstrate that publication "threaten[s] an interest more fundamental than the First Amendment itself." *Id.* at 227. In addition, "a party seeking a prior restraint against the

press must show...that the prior restraint will be effective and that no less extreme measures are available." *In re Providence Journal,* 820 F.2d at 1351.

Eli Lilly here has fallen far short of meeting these standards. In the course of three briefs, Eli Lilly has invoked only two interests to support its requested relief: (1) its desire to prevent the disclosure of confidential proprietary information, and (2) the Court's interest in ensuring the integrity of the discovery process. Lilly Memo. at 2, 10. The first of these interests, however, has been repeatedly deemed insufficient to support a prior restraint. *See CBS v. Davis,* 510 U.S. at 1318 (rejecting "economic harm" resulting from disclosure of confidential proprietary practices); *Proctor & Gamble,* 78 F.3d at 225 ("The private litigants' interest in protecting their vanity or their commercial self-interest simply does not qualify as grounds for imposing a prior restraint."); *Ford Motor Co.,* 67 F.Supp.2d at 752 (holding that risk to trade secrets was not enough to justify prior restraint). Furthermore, the Second Circuit has made it clear that trade secret interests that are collateral to the issues raised in the underlying litigation will not support a prior restraint. *See Bridge C.A.T. Scan Assoc's v. Technicare Corp.,* 710 F.2d 940, 946 (2d Cir. 1983) (district court erred in granting prior restraint where "any issue as to trade secrets was completely collateral to the underlying dispute"). And while the interest in safeguarding the integrity of the discovery process is doubtless an important one, *Proctor & Gamble* makes it clear that it cannot justify the imposition of prior restraints on nonparties. *See Proctor & Gamble,* 78 F.3d at 225.

Eli Lilly has also failed to demonstrate that the prior restraint it seeks will be efficacious. On the contrary, Eli Lilly admits that "this Court can not undo the harm and prejudice [Lilly] has suffered...." Lilly Memo. at 1. Moreover, the undisputed facts demonstrate that the Lilly Documents remain readily available on the Internet from sources unrelated to the Nonparties,

11

some of which appear to be located outside the United States. *See* Nonparties' Findings ¶ 19 (citing Decls. of Laura Mason, attached to Nonparties' Findings as Exh. F).[8] Accordingly, the prior restraint sought by Eli Lilly will not meaningfully mitigate any harm suffered by Eli Lilly. Rather, it will only bar the Nonparties from fully participating in the global discussion regarding the Lilly Documents that is currently proceeding without them.

## II. The Relief Sought by Eli Lilly Against the Nonparties is Beyond the Scope of the Court's Injunctive Authority

Even if it could somehow overcome the "heavy presumption" against prior restraints, Eli Lilly's proposed injunction must be rejected because it purports to bind nonparties who did not act "in active concert or participation" with any party to the underlying products liability litigation.

As the Second Circuit has recognized, "Rule 65(d) codifies the well-established principle that, in exercising its equitable powers, a court 'cannot lawfully enjoin the world at large.'" *People of N.Y. v. Operation Rescue Nat'l*, 80 F.3d 64, 70 (2d Cir. 1996) (quoting J. Learned Hand in *Alemite Mfring Corp. v. Staff*, 42 F.2d 832, 832-33 (2d Cir. 1930)); *accord Regal Knitwear Co. v. N.L.R.B.*, 324 U.S. 9, 14 (1945) (recognizing F.R.C.P. 65(d) as an expression of common law doctrine defining scope of a court's equitable powers). Accordingly, in order for a nonparty to be bound by an injunction, "that entity must either aid and abet the defendant or be legally identified with it." *Paramount Pictures Corp. v. Carol Publishing Group, Inc.*, 25 F.Supp.2d 372, 374 (S.D.N.Y. 1998); *accord Zenith Radio Corp. v. Hazeltine Research, Inc.*,

---

[8] Eli Lilly contends that no evidence has been submitted regarding the continued availability of the Lilly Documents on the Internet. Lilly Prop. Findings ¶ 106. This is incorrect. *See* Decl. of Laura R. Mason, submitted as Exh. A to John Doe's Supplemental Brief for Clarification of Injunction (filed Jan. 12, 2007). The Nonparties have resubmitted this declaration, along with an updated declaration, with their Proposed Findings of Fact. By relying on declarations to establish undisputed factual matters, the Nonparties are following the same practice utilized by Eli Lilly in its own filings. *See* Decl. of Gerald Hoffman, submitted as Exh. A to Lilly Memo.

395 U.S. 100, 112 (1969) ("[A] nonparty with notice cannot be held in contempt until shown to be in concert or participation" with a party); *Operation Rescue,* 80 F.3d at 70 (injunctions reach a nonparty only where the nonparty abets or is legally identified with a party). A court's injunctive authority does not extend to nonparties who are acting independently, even where they may share the same purpose as a party, or where their acts may cause the same harm. *See Alemite,* 42 F.2d at 833 ("Thus, the only occasion when a person not a party may be punished, is when he has helped to bring about, not merely what the decree has forbidden, …but what it has the power to forbid, the act of a party."); *Paramount Pictures,* 25 F.Supp.2d at 374-76 (court could not enjoin nonparty distributors of infringing books, despite likelihood of further infringing dissemination by distributors, because distributors were acting independently).

As described above, Dr. Egilman is the only person legally identified with a party in the underlying Zyprexa products liability litigation, and accordingly the only person directly bound by CMO-3. The Nonparties had no knowledge of and were not involved in Dr. Egilman's disclosure of the Lilly Documents to Mr. Gottstein. Eli Lilly has offered no evidence suggesting that any of the Nonparties received instructions from, nor had any contact with, Dr. Egilman. The record is also undisputed that Mr. Gottstein never told any of the Nonparties what to do with the Lilly Documents after he received them from Dr. Egilman. *See* Jan. 17 Tr. at 152. Instead, the evidence at most suggests that some of the Nonparties independently shared Dr. Egilman and Mr. Gottstein's desire that the Lilly Documents be widely disseminated. Even if true, this simply is not enough to support an injunction against nonparties acting independently. *See Paramount Pictures,* 25 F.Supp.2d at 374-76.

# CONCLUSION

For the reasons set forth above, as well as those set forth in the briefs previously filed by the Nonparties, the Nonparties respectfully request that the Court deny Eli Lilly's request to modify and extend the January 4, 2004 Temporary Mandatory Injunction.

Date: February 7, 2007                                            Respectfully submitted,


/s/
Fred von Lohmann, FV-3955
*Appearing pro hac vice*
ELECTRONIC FRONTIER FOUNDATION
454 Shotwell St.
San Francisco, CA 94110
(415) 436-9333 x123
fax (415) 436-9993
fred@eff.org
*Attorney for nonparty John Doe*

Ted Chabasinski (TC 9374)
*Appearing pro hac vice*
2923 Florence Street
Berkeley, California 94705
Phone and fax (510) 843-6372
tedchabasinski@gmail.com
*Attorney for non-parties MindFreedom International, David Oaks, Judi Chamberlin, and Robert Whitaker*

Alan C. Milstein
Michael Dube
SHERMAN, SILVERSTEIN, KOHL, ROSE & PODOLSKY, P.A.
Fairway Corporate Center
4300 Haddonfield Road, Suite 311
Pennsauken, NJ 08109
(856) 662-0700
fax (856) 488-4744
AMilstein@sskrplaw.com
*Attorneys for Vera Sharav, David Cohen, and AHRP*