Ted Chabasinski, Esq.
California State Bar No. 132871
2923 Florence Street
Berkeley, CA 94705
Telephone and Facsimile: (510) 843-6372
E-mail: tedchabasinski@gmail.com

Attorney for Respondents MindFreedom
International, Judi Chamberlin, and
Robert Whitaker

FILED
IN CLERK'S OFFICE
FEB 0 8 2007
U.S. DISTRICT COURT E.D.N.Y
★ BROOKLYN OFFICE ★

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| IN RE: ZYPREXA PRODUCTS LIABILITY LITIGATION | NO. 07-0504<br>NO. 04-MDL-1596<br><br>MEMORANDUM OF POINTS AND AUTHORITIES OF RESPONDENTS MINDFREEDOM INTERNATIONAL, JUDI CHAMBERLIN AND ROBERT WHITAKER OPPOSING EXTENSION OF MANDATORY INJUNCTION |

**THE COURT MAY ENJOIN NON-PARTIES ONLY IF
THEY HAVE ACTED IN CONCERT WITH PARTIES,
OR HAVE AIDED AND ABETTED THEM IN SOME WRONGDOING**

It is long-settled law that nonparties to a case may only be enjoined if they have a certain relationship with parties.

Rule 65(d) of the Federal Rules of Civil Procedure provides that "[e]very order granting an injunction...is binding only upon the parties to the action...and upon those persons in active concert and participation with them."

And, in *Alemite Mfrg. v. Staff*, 42 F. 2d 832, 833 (2d Cir. 1930), still the leading case on this issue, Judge Learned Hand wrote that "the only occasion where a person not a party may be punished, is when he

1

Memorandum of Points and Authorities Opposing Extension of Mandatory Injunction



has helped to bring about, not merely what the decree has forbidden...but what it has the power to forbid, the act of a party." See also *People of New York v. Operation Rescue*, 80 F. 3d 64 (2d Cir. 1996); *Regal Knitwear v NLRB*, 324 U.S. 9, 14 (1945); *Zenith Radio Corp v. Hazeltine Research Inc.*, 395 U.S. 100, 112 (1969).

Respondents will demonstrate that Eli Lilly has completely failed to establish that any of them have acted in concert with, or aided and abetted, the alleged wrongful obtaining of the documents in question by James Gottstein. Furthermore, Lilly has introduced no evidence at all that respondents were connected in any way with the acts of Dr. David Egilman, a party-identified expert witness who turned over the documents to Mr. Gottstein.

Even if the court becomes convinced that any of these respondents aided and abetted Mr. Gottstein, he is not a party. While there appears to be no authority directly on point, the logic of *Alemite* and its progeny, and Rule 65(d) as well, would mandate that respondents' connection with the alleged unlawful distribution of the documents must have a close relation with the acts of a party. Otherwise, where would the process end?

Suppose a non-party gives the documents to yet another non-party. That person gives them to a friend, who makes copies and distributes them to several other people. One of those people puts them on her website to be downloaded. At this point, we have reached five degrees of separation. At what point would the court's authority end to enjoin all these people? As Judge Hand observed, a court "cannot lawfully enjoin the world at large." *Alemite* at 833.

But respondents believe this legal argument will not be necessary, as petitioner's evidence claiming respondents aided and

1 abetted Mr. Gottstein is so flimsy that the court will find it clear that
2 respondents should not be further enjoined.

3 Before discussing each respondent, we would like to bring the
4 court's attention to part of the sworn testimony of Mr. Gottstein at the
5 January 16-17 evidentiary hearing, which bears on all the respondents
6 here. Mr. Gottstein said that before obtaining the documents in question,
7 he did not discuss his plans with Judi Chamberlin, Robert Whitaker, David
8 Oaks, or anyone else connected with MindFreedom. Similarly, while in the
9 process of obtaining the documents, he did not discuss his plans with any
10 of these respondents. And finally, Mr. Gottstein testified under oath that
11 after he obtained the documents, he did not discuss what he thought
12 should be done with them with any of the respondents here. Transcript,
13 151-152. Petitioner has not introduced any evidence that would establish
14 otherwise, although it apparently hopes that the mass of largely irrelevant
15 and often repetitive documents it has introduced might somehow convince
16 the court.

17

18 **JUDI CHAMBERLIN**

19 Petitioner's Proposed Findings of fact as to Judi Chamberlin
20 state only that Ms. Chamberlin is a member of the board of MindFreedom
21 International, that she has not yet returned the documents in question,
22 and that "[t]here is no evidence that Ms. Chamberlin took any action to
23 stop the efforts of MFI members to disseminate the unlawfully obtained
24 Zyprexa documents."

25 Respondents point out here that it is petitioner, not
26 respondents, who has the burden of proof, and furthermore. Ms.
27 Chamberlin's action or inaction in this regard has no relevance as to
28

whether she aided and abetted either party-identified Dr. Egilman or non-party Mr. Gottstein.

This statement in the Proposed Findings of Fact appears to be petitioner's entire case against Ms. Chamberlin.

**ROBERT WHITAKER**

In Petitioner's Exhibit 28, Lilly refers to a series of emails among various people in which Mr. Gottstein appears to have been a passive recipient. Mr. Whitaker's contribution to the "conversation" is a statement to Mr. Gottstein that he had done the right thing, at great risk to himself, and that he need not apologize for having gotten other people involved by sending them the documents. A reading of all the emails in this "conversation" shows nothing about any conspiracy or acts coordinated with Mr. Gottstein. Rather, it shows a discussion among like-minded people, who are clearly in sympathy with Mr. Gottstein.

Respondents ask, so what? As the court has learned over the course of these proceedings, there is a rather widespread movement now of groups seeking to protect psychiatric patients from abuse, particularly to protect them from being forced to ingest highly toxic psychiatric drugs. In this proceeding, MindFreedom International, the Alliance for Human Research Protection, the National Association for Rights Protection and Advocacy (NARPA), the Law Project for Psychiatric Rights, and the International Center for the Study of Psychiatry and Psychology (ICSPP), all have been mentioned. There are many more. There is nothing sinister about the unsurprising fact that most people involved in these groups will respond the same way to a development like the release of the Zyprexa documents. A common set of beliefs and principles does not constitute a conspiracy.

In another email from Mr. Whitaker to Mr. Gottstein, dated 12/16/06, and cited by petitioner as its Exhibit 30, Mr. Whitaker says that if the New York Times doesn't run the story, then he would try to publicize the documents. There is no evidence that Mr. Whitaker actually did so, and more importantly, no response by Mr. Gottstein is offered by petitioner, although they had extensive access to Mr. Gottstein's emails over a period of several months.

Again, this does not show a conspiracy, but rather Mr. Whitaker's strong feelings toward the issue. Petitioner introduces no evidence that Messrs. Whitaker and Gottstein planned any action together about the documents, or even that Mr. Whitaker did *anything* with the documents, other than receive them.

## DAVID OAKS AND MINDFREEDOM INTERNATIONAL

Before considering the mind-numbing jumble of confusing, repetitious, and overwhelmingly irrelevant documents offered by petitioner against Mr. Oaks, the court is urged to focus on a small but very significant fact, established by sworn testimony. On January 17, both Mr. Gottstein and Mr. Oaks stated under oath that Mr. Gottstein had never sent MindFreedom a copy of the documents. Transcript, Pages 152 and 228, also 235 at 21-23.

Petitioner alleges that Mr. Oaks and Mr. Gottstein were involved in a conspiracy to wrongfully disseminate these documents. What a strange conspiracy this would be, when the alleged mastermind didn't even send the documents in question to his "co-conspirator"!

The court is also requested to take note of Mr. Oaks' sworn testimony that he only became aware that Mr. Gottstein had obtained the documents when he read about it in the New York Times, Transcript at

5

Memorandum of Points and Authorities Opposing Extension of Mandatory Injunction

1  236:1; and that he had never had any discussion with Mr. Gottstein as to
2  what he or MindFreedom should do with the documents, either before,
3  during, or after Mr. Gottstein obtained the documents. Transcript at 236:3-
4  6.

5  Petitioners make much of the fact that Mr. Oaks did indeed in
6  effect disseminate the documents by referring people to websites where
7  they could be downloaded. At that time, Mr. Oaks and MindFreedom were
8  not enjoined from doing so.

9  Again, respondents ask, so what? The real issue here is not
10 whether MindFreedom circulated the documents independently, but
11 whether they acted in concert with, or aided and abetted, a party (which
12 Mr. Gottstein is not).

13 Petitioners claim that Mr. Oaks was in constant contact with Mr.
14 Gottstein about the documents and what to do about them. It is true that
15 there were many emails between the two at that time, but none of
16 them involved mutual planning or discussions of what tactic would be best
17 to circulate the documents. Rather, the emails dealt with various topics
18 that two people working in the same movement might discuss.

19 Petitioner's Exhibit 8, for example, includes a series of emails
20 discussing problems both men had had regarding a blog whose pro-drug
21 company owner had attacked both Oaks and Gottstein for their activities.
22 Other people in the email conversation chimed in with their own
23 experiences with this blog.

24 Another email in the same exhibit is Mr. Gottstein's notification
25 that his email address has been changed. In another email, Mr. Oaks
26 sends Mr. Gottstein a draft of a news article about the controversy that is
27 meant to appear on the MindFreedom website. In yet another email, they
28

discuss the problems both organizations have had trying to make clear that they have no connection to the Church of Scientology.

Exhibit 8 soon becomes completely chaotic and difficult to follow, as petitioner seemed to have decided to throw in everything it could and hope something would stick. After a certain point, respondents here were completely unable to make sense of it. And we doubt that the court, should it be inclined to try to read it all, would be able to make much sense of it either.

One more point should probably be made. Petitioner claims in its Revised Findings of Fact, Paragraph 79 et seq., that Mr. Oaks lied in his testimony when he said that "in no way, shape, or form have we...posted these documents ourselves to the internet or disseminated them in that way." Petitioner claims that "after being confronted with a copy of the update from the MindFreedom website...Mr. Oaks changed his testimony and admitted that MindFreedom did provide links to the stolen [sic] Zyprexa documents."

But there was no contradiction in Mr. Oaks' testimony. He said that MindFreedom did not post the documents itself to the internet or disseminate them in that way. He never denied that the MindFreedom website directed readers to other websites where the documents could be downloaded. Furthermore, an examination of Mr. Oaks' testimony will show that he acknowledged, several times, posting other websites' links to the documents long before he was "confronted" with the document referred to by petitioner. Transcript, 227, et seq.

While this discussion may seem trivial, its importance is that it shows the tactics of petitioner, trying to accomplish by misleading innuendo what it cannot do with any solid evidence.

It of course was never any secret that MindFreedom, before being enjoined, was independently encouraging people to download the documents, and Mr. Oaks testified candidly and fully about these activities. But what petitioner has failed to establish, because it did not happen, is that MindFreedom or Mr. Oaks aided and abetted or acted in concert with Mr. Gottstein or Dr. Egilman.

## CONCLUSION

Petitioner has failed utterly to make its case. Respondents here, whatever they may have done with the documents, acted on their own and not as part of any conspiracy. At least as to them, the injunction should be vacated.

Respectfully submitted,

/s/ Ted Chabasinski
TED CHABASINSKI
Attorney for Respondents MindFreedom International, Judi Chamberlin and Robert Whitaker

PROOF OF SERVICE

I am over the age of 18, and not a party to the within action. On February 6, 2007, I served the following document:

**MEMORANDUM OF POINTS AND AUTHORITIES OF RESPONDENTS MINDFREEDOM INTERNATIONAL ET AL. OPPOSING EXTENSION OF MANDATORY INJUNCTION**

on the following persons by e-mail:

Sean Fahey, Pepper Hamilton LLP

John McKay

Alan Milstein, Sherman Silverstein

Alex Reinert, Koob & Magoolaghan

Fred von Lohmann, Electronic Frontier Foundation

Peter Woodin, JAMS

Ken Feinberg, The Feinberg Group, LLP

Melvyn Weiss, Milberg Weiss

James Gottstein

Nina Gussack, Pepper Hamilton LLP

I also sent a hard copy of the document by overnight delivery to the Honorable Jack B. Weinstein, Senior District Judge, Eastern District of New York, 225 Cadman Plaza East, Brooklyn, N.Y. 11201. attention of June Lowe.

I declare under penalty of perjury under the laws of the United States and the State of California that the foregoing is true and correct. Executed at Berkeley, California, on February 6, 2007

/s/ *Ted Chabasinski*
TED CHABASINSKI