D. John McKay
Law Offices of D. John McKay
117 E. Cook Ave.
Anchorage, Alaska  99501
Telephone:  (907) 274-3154
Facsimile:   (907) 272-5646
E-mail:   mckay@alaska.net

Attorney for  Respondent Terrie Gottstein

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF NEW YORK

───────────────────────────────x
                               )
In re: ZYPREXA                 )   07-0504 (JBW)
PRODUCTS LIABILITY LITIGATION  )
                               )
───────────────────────────────x

04-MDL-1596 (JBW)  [Related]

**RESPONSE OF TERRIE GOTTSTEIN TO
ELI LILLY AND COMPANY'S BASELESS REQUEST TO MODIFY AND
EXTEND TEMPORARY MANDATORY INJUNCTION**

Eli Lilly and Company ("Lilly") has filed a false, defamatory, and meritless pleading seeking to subject Ms. Terrie Gottstein to an overreaching injunction based on one privileged[1] eight word e-mail conversation she had with her husband, attorney James Gottstein, about the possibility of his contacting a member of the United States

---

[1] This private spousal communication is privileged, and when Lilly first gave notice that it intended to use this communication against Mr. and Mrs. Gottstein — on the day Lilly was filing its brief — Mr. Gottstein, through counsel, objected.  Lilly, however, refused to honor the demand that it not use this privileged communication. This, of course, forces the Gottsteins into the position of having to move to strike this exhibit — and therefore appearing to have something to hide from the court.   This is just one small example out of a legion of misuses of the record by Lilly against all of the respondents.  As a matter of principle, though they have nothing to hide, Mr. and Mrs. Gottstein do not wish to waive their marital privilege, and ask this court to order this document submitted by Lilly as Ex. 34 stricken from the record, or at least that it may not be used by Lilly.

Congress.[2] Terrie Gottstein has a First Amendment right to petition a member of Congress for a redress of grievances, or to encourage or support her husband in doing so. She has a right to speak freely for her own reasons, or in support of her husband's continuing efforts to combat abuses by the pharmaceutical industry, and his continuing efforts to champion the rights of individuals diagnosed with mental illnesses, without Eli Lilly, trying to silence her or intimidate her or chill her free speech rights by asking this court to enjoin her.

Lilly's attempt to drag Terrie Gottstein into the further proceedings in this case[3] is especially perplexing after the court so clearly articulated that it considered this protected speech: "I should like to emphasize again, as I did, I thought, on the 3rd, that no one is enjoined from discussing anything they wish to discuss. . . . So, I really don't see at this moment how free speech of anybody is affected." (Tr. of January 8, 2007, hearing, at 28.) It may be understandable that the court would not fully anticipate Lilly's overreaching conduct, but now that it is apparent, the court should soundly repudiate it.

---

[2] The document at issue is attached as Ex. 34 to Lilly's proposed Findings of Fact, and is a one page transmission forwarding a New York Times article about state efforts to get lower cost generic insulin to fight a diabetes epidemic. The article mentions Rep. Henry Waxman, and Terrie Gottstein's entire communication with her husband consists of the message: "Interesting . . . may be your way in to Waxman. . . . t"

[3] Though it seeks to have this court enjoin her, Lilly has not served process on Ms. Gottstein — an Alaska resident over whom the court would have no jurisdiction except possibly by virtue of an appearance by her counsel at a hearing — nor has it otherwise indicated that it is serving her with pleadings. We will assume that this is because undersigned counsel represents both Mr. and Mrs. Gottstein, and is presumed to be served with pleadings for both. As to other respondents, though, including but not limited to Canadian resident Bruce Whittington, for example, the court should demand proof that they are properly before this court, and properly served, before considering enjoining them in their individual capacities.

This is especially true because Lilly may be emboldened, particularly as to those respondents who have not appeared or been represented by counsel in this case, by the court's willingness at an earlier stage to enjoin one or more respondents because they weren't present to register an objection. Whatever justification there might have been to do so to preserve the status quo on a temporary basis, a permanent injunction subjecting these individuals and entities to the continuing jurisdiction of the court and the whims of Lilly requires much more.

Terrie Gottstein never saw the Zyprexa Documents at issue in this controversy. The record shows that her husband gave her a copy of DVDs he made after the documents arrived pursuant to his subpoena, but that she returned them to him immediately when requested to do so. (Tr. of January 3, 2007, Hrg. at 13) The record is clear that she never even opened the DVD, and there is no suggestion that she ever downloaded, otherwise possessed, or even looked at the documents. Nor is there the slightest proof that she ever copied or distributed or disseminated the documents. She has done absolutely nothing improper here. Lilly, which bears the burden of proof, did not attempt to produce a shred of evidence to the contrary, nor could it. And yet, notwithstanding the complete lack of any basis for doing so, Lilly asserts, and would have this court find in its Order, that Terrie Gottstein "participated in a calculated scheme to leak documents to prejudice Eli Lilly and Company." (Lilly's January 31, 2007, proposed Order). It calls her a "wrongdoer" who has inflicted harm on the judicial system and others, and claims on the basis of these misstatements that it "is necessary" for the court to enjoin Ms. Gottstein "from disseminating or facilitating the further dissemination" of the Zyprexa Documents. Id.

An injunction restricting activities protected by the First Amendment should never be granted lightly. "A preliminary injunction is a prior restraint, and as such, "bear[s] a heavy presumption against its constitutional validity." *Bantam Books, Inc. v. Sullivan,* 372 U.S. 58, 70, 83 S.Ct. 631, 9 L.Ed.2d 584 (1963). Nearly thirty years ago, in *Organization for a Better Austin v. Keefe,* 402 U.S. 415, 91 S.Ct. 1575, 29 L.Ed.2d 1 (1971), the Supreme Court struck as unconstitutional a state court's order enjoining distribution of leaflets critical of the respondent's business practices," cited in *Bihari v. Gross,* 119 F.Supp.2d 309 (S.D.N.Y. 2000). *See* also, *Nebraska Press Ass'n. v. Stuart,* 427 U.S. 539, 570, 96 S.Ct. 2791, 49 L.Ed.2d 683 (1976) (rejecting prior restraint issued to ensure protection of criminal defendant's Sixth Amendment right to a fair trial); *New York Times Co. v. United States,* 403 U.S. 713, 91 S.Ct. 2140, 29 L.Ed.2d 822 (1971) (even during wartime, newspapers not enjoined from publishing papers that government feared could threaten national security).

Based on experience with Lilly to date, an injunction on grounds such as those relied upon here would give Lilly license to continue harassing Ms. Gottstein and the other respondents named in Lilly's filings — a license to monitor their phone messages, e-mails, correspondence and other communications, including marital communications, searching for wisps and threads that Lilly might weave together to characterize these people engaging in constitutionally protected speech on maters of vital concern to themselves, and to the public, as "wrongdoers." It would license Lilly to see whether they have, as in Ms. Gottstein's case, suggested that it might be good to contact someone in Congress, or, as in the case of other respondents, whether they have talked about writing news articles or about consulting lawyers concerning how best to present these

matters of public interest to the court.  *(see, e.g.*, Ex. 31 to Lilly's 1/31 proposed Findings, concerning Judith Ziegler).  Will she and the others be hauled into court (or refrain from participating in faraway federal court proceedings, involving a legion of lawyers, at their peril) if she passes along another *New York Times* article about Zyprexa?  Will they be ordered to appear for depositions, or to produce their computers for examination in Philadelphia or New York, if they freely visit websites like any other citizen can, or write a note about possible Congressional interest in the activities of pharmaceutical companies?  This concern would be ludicrous were it not real, and so instead it is, shamefully, dead serious.

The obvious abuse in Lilly's pursuit of Terrie Gottstein here makes this, on the one hand, a very simple and straightforward matter.  Lilly's motion, with respect to her, should be promptly and unambiguously rejected. Any injunction must be dissolved as against her, if not *in toto*.  On other hand, though, this simple fact setting of her case provides an illuminating look at Lilly's practices, and a reminder to be aware that these practices, even though they are compounded and obfuscated in the attacks on some of the other respondents, are clearly repeated time and again.

For the reasons stated above, Terrie Gottstein requests that this court find that Lilly's motion for relief against her is devoid of merit, and that it refuse to continue or grant any further injunctive or other relief against her.  She also respectfully suggests that the court do the same for others who may be similarly situated, but who may not have the funds, or may not understand the appropriate way in which to appear before the federal court in Brooklyn, New York, or may not see the need when they have done nothing wrong.   Their First Amendment rights cannot be presumed to have vanished.

Dated: February 7, 2007                     Respectfully submitted,


                                                /s/DJohnMcKay/

                                        by: D. John McKay
                                            Law Offices of D. John McKay
                                            117 E. Cook Ave.
                                            Anchorage, Alaska 99501
                                            Phone: (907) 274-3154
                                            Fax:   (907) 272-5646
                                            E-mail:mckay@alaska.net